# 22-1431

## United States Court of Appeals

*for the*

## Second Circuit

RITA FLYNN,

*Plaintiff-Appellant,*

– v. –

MICHAEL BLOOMINGDALE, individually and in his official capacity for the
New York State Department of Corrections and Community Supervision,
JOHN A. SHIPLEY, individually and in his official capacity for the New York
State Department of Corrections and Community Supervision,
DANIEL OLIVER, individually and in his official capacity for the New York
State Department of Corrections and Community Supervision,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

CAPEZZA HILL LLP
Benjamin W. Hill, Esq.
*Attorneys for Defendants-Appellees*
30 South Pearl Street, Suite P-110
Albany, New York 12207
(518) 478-6065

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. iii

ISSUES PRESENTED...................................................................... 1

STATEMENT OF THE CASE......................................................... 1

    A.    Procedural History........................................................ 2

    B.    Appellant's Relevant Factual Allegations.................... 4

    C.    The District Court Dismissed Appellant's
           Retaliation Claims ....................................................... 7

    D.    The District Court Dismissed Appellant's Procedural
           Due Process Claim ....................................................... 8

SUMMARY OF THE ARGUMENT ................................................ 10

ARGUMENT .................................................................................. 11

    POINT I    THE DISTRICT COURT CORRECTLY HELD
                 THAT APPELLANT'S SPEECH WAS NOT
                 PROTECTED UNDER THE FIRST
                 AMENDMENT................................................. 11

              A.    The District Court Correctly Determined
                     that Appellant was not Speaking on a
                     Matter of Public Concern ....................... 12

    POINT II   THE DISTRICT COURT CORRECTLY
                 RULED THAT DUE PROCESS WAS
                 SATISFIED...................................................... 20

              A.    Appellant Did Not Plausibly Plead a
                     Cognizable Deprivation of a Liberty
                       or Property Interest ................................. 22

              B.    Appellant Was Provided Adequate Post-
                       Deprivation Process ................................ 24

i

C. Appellant Was Provided Adequate Pre-
Deprivation Process ................................................. 25

CONCLUSION ............................................................................... 26

CERTIFICATE OF COMPLIANCE ............................................................... 27

# TABLE OF AUTHORITIES

**Cases:**        **Page(s)**

*Allen v. Riese Organization, Inc.,*
106 A.D.3d 514 (1st Dep't 2013) .......................................................... 23

*Board of Regents v. Roth,*
408 U.S. 564 (1972)................................................................................ 22

*Bryant v. N.Y. State Educ. Dep't,*
692 F.3d 202 (2d Cir. 2012) .................................................................. 20

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,*
444 F.3d 158 (2d Cir. 2006) .............................................................. 17, 18

*Cleveland Bd. of Educ. v. Loudermill,*
470 U.S. 532, 545–46 (1985) ................................................................ 25

*Cole-Hatchard v. Cty. of Rockland,*
2019 U.S. Dist. LEXIS 47078 (S.D.N.Y. Mar. 21, 2019)...................... 11

*Connick v. Myers,*
461 U.S. 138 (1983)................................................................................ 19

*Cortarelo v. Vill. of Sleepy Hollow Police Dep't,*
460 F.3d 247 (2d Cir. 2006) .................................................................. 17

*Cox v. Warwick Valley Cent. Sch. Dist.,*
654 F.3d 267 (2d Cir. 2011) .................................................................. 11

*Finley v. Giacobbe,*
79 F.3d 1285 (2d Cir. 1996) .............................................................. 22, 23

*Flynn v. DOCCS et al.,*
Index. No. EF006948-2018
(Orange County Supreme Court 2018)............................................. *passim*

*Flynn v. DOCCS et al.,*
2018 WL 2041713 (S.D.N.Y. Apr. 30, 2018) .................................. *passim*

*Garcetti v. Ceballos,*
547 U.S. 410 (2006)........................................................................... *passim*

*Golodner v. Berliner,*
770 F.3d 196 (2d Cir. 2014) .............................................................. 17, 18

*Hellenic Am. Neighborhood vs. City of New York*,
  101 F.3d 877 (2d Cir. 1996) ............................................................. 8, 24, 25

*Hudson v. Palmer*,
  468 U.S. 517 (1984)................................................................... 24

*Konits v. Valley Stream Cent. High Sch. Dist.*,
  394 F.3d 121 (2d Cir. 2005) ...................................................... 17

*Lewis v. Cowen*,
  165 F.3d 154 (2d Cir. 1999) ............................................. 12, 18, 19

*Parratt v. Taylor*,
  451 U.S. 527 (1981)................................................................... 24

*Richardson v. New York City Bd. of Educ.*,
  711 F. App'x 11 (2d Cir. 2017)............................................. 20, 23

*Rita Flynn v. DOCCS et al.*,
  Civ. 7:15-cv-02864 (S.D.N.Y.) ............................................... 2

*Rivera-Powell v. City of New York Bd. of Elections*,
  470 F.3d 458 (2d Cir. 2006) ..................................................... 9, 26

*Ruotolo v. City of New York*,
  2006 WL 2033662 (S.D.N.Y. July 19, 2006)............................. 2, 13, 14, 18

*Sousa v. Roque*,
  578 F.3d 164 (2d Cir. 2009) ..................................................... 20

## **Other Authorities:**

CPLR Article 78................................................................... 1

Fed. R. Civ. P. 12(b)(6)........................................................ 1, 3, 4, 26

New York Civil Service Law § 75-b ...................................... 3

42 U.S.C. § 1983 ................................................................. 1

iv

## ISSUES PRESENTED

1. Whether the District Court correctly ruled that Appellant's prior lawsuits did not constitute protected speech under the First Amendment of the United States Constitution?

2. Whether the District Court correctly ruled that Appellant received adequate due process under the Fourteenth Amendment of the United States Constitution, where Appellant resigned from her position as a public employee, accepted the benefits of said resignation, and did not avail herself of an Article 78 action under New York Civil Practice Law & Rules (CPLR)?

## STATEMENT OF THE CASE

Appellant Rita Flynn (hereinafter "Appellant" or "Flynn") appeals from the District Court's dismissal under Fed. R. Civ. P. 12(b)(6) of her First Amendment retaliation and Fourteenth Amendment procedural due process claims, brought pursuant to 42 U.S.C. § 1983. The District Court dismissed the entirety of Appellant's Third Amended Complaint ("TAC").

In the instant appeal, Appellant challenges only the dismissal of 1) her First Amendment retaliation claims against all Defendants-Appellees and 2) her procedural due process claims against Defendants-Appellees Bloomingdale and Shipley. App. Br. at 46. Appellant's argument, at bottom, is that incorporating unprotected speech into a filed lawsuit converts that speech into protected speech

under the First Amendment. However, as one court poignantly observed: "[t]o hold [] that filing a lawsuit alleging retaliation for non-protected speech would give rise to a First Amendment complaint [] would defy logic, allowing a plaintiff to bootstrap a non-actionable objection to legitimate employer discipline into a valid First Amendment claim." *Ruotolo v. City of New York*, 2006 WL 2033662, at \*5 (S.D.N.Y. July 19, 2006). So too here, Appellant's creative attempt at an end-around First Amendment limitations finds no support in controlling precedent and, if condoned, would create an entirely new class of First Amendment retaliation claims, defying logic and rewarding litigiousness.

### A. Procedural History

In 2017, Appellant filed a complaint in the Southern District of New York ("*Flynn I*")[1] against the New York State Department of Corrections and Community Supervision ("DOCCS"), Mary Kopp-Adams and Frank Gemmati, alleging that they had retaliated against her for speaking out about violations of law and threats to public safety, of which she had become aware in her position as a parole officer with DOCCS. A-58, ¶ 12. On April 30, 2018, the District Court (the Honorable Vincent L. Briccetti) dismissed that complaint on the pleadings, finding that Plaintiff's

---

[1] *Rita Flynn v. DOCCS et al.*, Civ. 7:15-cv-02864 (S.D.N.Y.) (dismissed by Decision and Order of the Honorable Vincent L. Briccetti, *Flynn v. DOCCS et al.*, 2018 WL 2041713 (S.D.N.Y. Apr. 30, 2018)).

speech had been made pursuant to her official work duties and, therefore, did not merit protection under the First Amendment. A-21-24.

Thereafter, in September 2018, Appellant filed a State law complaint in Orange County Supreme Court alleging retaliation in violation of New York's Civil Service Law § 75-b (hereinafter "*Flynn II*")[2] and continued to express her concerns regarding safety threats posed to the public by DOCCS' purported mishandling of a released sex offender parolee. A-58-61, ¶¶ 14, 17-21.[3]

On November 10, 2020, Appellant commenced this action, claiming, among other things, that Appellees retaliated against her for filing *Flynn I* and *Flynn II*. A-1. Thereafter, Appellant twice amended her complaint, after which Appellees filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. ("Federal Rule") 12(b)(6). A-10. After hearing oral argument from both sides, the District Court (Honorable Philip M. Halpern) dismissed the TAC in its entirety in a ruling from the bench. A-11; SPA 2-48.

---

[2] *Flynn v. DOCCS et al.*, Index. No. EF006948-2018 (Orange County Supreme Court 2018) (dismissed by Decision and Order dated March 5, 2021) (decision *available at* www.iapps.courts.state.ny.us, Case No. EF006948-2018, Doc #118).

[3] Though not mentioned in the TAC filed on August 31, 2021, Appellant's State Court lawsuit in Orange County Supreme Court was dismissed by Decision and Order dated March 5, 2021 on the grounds that Plaintiff's February 24, 2020 arbitration settlement mooted her claims. Information *available at* www.iapps.courts.state.ny.us, Case No. EF006948-2018, Doc #118.

**B. Appellant's Relevant Factual Allegations**

In dismissing the TAC pursuant to Federal Rule 12(b)(6), the District Court accepted Appellant's allegations, summarized below, as true.

Appellant Rita Flynn worked as a parole officer employed by DOCCS from 2016 until her retirement in February 2020. A-74, ¶ 79. Defendant-Appellee Matthew Bloomingdale ("Bloomingdale") is the Associate Director HR 2 Labor Relations for DOCCS in Area 2. A-56, ¶ 4. Defendant-Appellee John Shipley ("Shipley") is the Director of Labor Relations at DOCCS. A-56, ¶ 5. Defendant-Appellee Donald Oliver ("Oliver") is the Deputy Commissioner of the Office of Special Investigations at DOCCS. A-57, ¶ 6.

In 2018, the DOCCS Office of Special Investigations ("OSI") began an investigation regarding a series of grievances that Appellant had filed, including a claim alleging retaliation against her by her employer. A-63, ¶ 30. OSI's investigation initially did not concern any wrongdoing by Appellant and focused solely on her affirmative retaliation claims. A-63, ¶ 31. Appellant provided Defendant-Appellee Oliver and OSI with materials related to her retaliation claim and copied her outside attorney on such correspondence. A-63-66, ¶¶ 32-43. Some of the information shared with her outside attorney concerned particular parolees and other individuals with whom she had come into contact during the course of her work. A-64, ¶ 36.

4

In early 2019, the focus of Oliver's investigation shifted from addressing Appellant's complaints, to the propriety of Appellant providing her outside attorney with confidential work-related information, including the identification of parolees, an infant and, on at least one occasion, a sex offender. A-65-67, ¶¶ 40-42, 45-48. With this shift in focus, Appellant became the target, rather than the complainant/victim, of the investigation. *Id.* at ¶ 48.

On August 5, 2019, Appellant received a Notice of Discipline ("NOD"), alleging that she had violated restrictions on protecting parolee identification. A-68 at ¶ 54. The NOD proposed that Appellant be terminated. A-69 at ¶ 58. In response to the NOD, Appellant filed a grievance. A-70 at ¶ 61. Bloomingdale responded to the grievance on behalf of DOCCS and represented DOCCS at the arbitration hearing, over which Shipley had supervisory power. A-67, ¶ 62.

At the arbitration hearing on February 24, 2020, Bloomingdale proposed a settlement to Appellant's union representative from the Public Employees Federation ("PEF"). A-70-71, ¶¶ 63-65. As part of these discussions, Appellant was told that, if she did not agree to withdraw her grievance and resign from her employment with DOCCS, Bloomingdale, Shipley, and DOCCS would refer her to law enforcement for prosecution of violations of the Sexual Offenders Registration Act because of her aforementioned disclosures of confidential information to her personal attorney. A-71, ¶¶ 66-68. This threatened criminal action lacked evidentiary

support and Appellant's exposure to criminal sanction was exaggerated. A-71-73, ¶¶ 69, 77.

In response, Appellant sought advice from a criminal attorney by telephone before entering into the settlement agreement. A-72, ¶¶ 70-72. In addition, she requested an adjournment of the arbitration to further consult with a criminal attorney, which request Shipley and Bloomingdale denied. A-72, at ¶ 72. Rather than proceed with the arbitration, Appellant decided to resign her position and signed a settlement agreement with DOCCS agreeing to the same. A-74, ¶¶ 79-80. Appellant did so out of fear of possible criminal prosecution regarding the above-described disclosures to her outside attorney. *Id.*

Appellant's central allegations in the TAC are that 1) Shipley and Bloomingdale inappropriately pressured her into resigning, under threat of exaggerated (though not totally unfounded) criminal charges, thereby violating her Fourteenth Amendment right to procedural due process, and 2) such actions constituted improper retaliation for Appellant's prior lawsuits and efforts to speak out regarding employment-related issues, in violation of her First Amendment right to freedom of speech. A-62, ¶¶ 28-29. Appellant's central allegations with respect

to Defendant-Appellee Oliver is that his investigative focus on Appellant's unlawful disclosures to her attorney was retaliatory in nature.[4]  A-77-78, ¶¶ 93, 120.

## C. The District Court Dismissed Appellant's Retaliation Claims

Addressing Appellant's First Amendment retaliation claims, the District Court noted that such claims were predicated upon alleged speech in the form of two lawsuits: *Flynn I* and *Flynn II*.  SPA-35.  Applying *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), the District Court addressed whether, through these lawsuits, Appellant (1) spoke on a subject of public concern and (2) spoke as a citizen or as an employee.  SPA-37.  The District Court demurred on the question of whether "bringing a lawsuit converts the same speech from that made as an employee into speech made as a citizen" because the "heart of the matter is whether the speech . . . was calculated to address personal grievance or whether it had a broader public purpose."  SPA-38.

Addressing the alleged protected speech in question –Appellant's lawsuits in *Flynn I* and *Flynn II* – the District Court observed that these prior actions concerned personal, adverse career, financial and emotional effects and sought the following relief: reinstatement to her former position, an injunction prohibiting further acts of retaliation against her, retroactive overtime pay, personal compensatory damages for

---

[4] Appellant also claimed that Oliver violated her procedural due process rights, however, she does not pursue that claim on appeal.  App. Br. at 54.

emotional harm, reputational damage, aggravation of personal anxiety and worry regarding future livelihood and professional standing. SPA-38-39. The District Court determined that Appellant's speech concerned personal grievances, not matters of public concern and, therefore, constituted unprotected speech as a matter of law. SPA-39. On this basis, the District Court dismissed Appellant's First Amendment retaliation claim.

Because the District Court determined Appellant's speech was not matter of public concern, it did not directly address whether, under *Garcetti*, Appellant had spoken as a private citizen or as an employee when she filed *Flynn I* and *Flynn II*. SPA-38.

## D. The District Court Dismissed Appellant's Procedural Due Process Claim

Appellant's procedural due process claims allege that Bloomingdale and Shipley improperly coerced her resignation, through an exaggerated threat of criminal prosecution, and denied her adequate time to consult with her criminal defense attorney, thereby depriving her of due process at her disciplinary arbitration hearing. The District Court reviewed the well-known rule under *Hellenic Am. Neighborhood vs. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) that there can be no viable Section 1983 action for procedural due process where an adequate post-deprivation procedure exists. SPA-40. The District Court took note of Appellant's

argument that her claim is distinguishable because it is based on "established state procedures as opposed to random, unauthorized acts by state employees." However, the Court determined such alleged distinction to be "immaterial" based on its view that, in either case, Appellant's claims failed.  SPA-41.

Specifically, the District Court determined that, to the extent "the conduct was random and unauthorized, the existence of a meaningful post deprivation remedy would automatically satisfy procedural due process."  SPA-41.  Likewise, the District Court ruled that, if it "were to find that the conduct was part of an established state procedure, such that the availability of a post deprivation remedy would not automatically satisfy due process," it would nonetheless find that the process provided to Appellant was constitutionally adequate. SPA-41. On the latter point, citing *Rivera-Powell v. City of New York Bd. of Elections*, 470 F.3d 458 (2d Cir. 2006), the District Court determined that Appellant was provided notice, an opportunity to be heard, and was "represented by [union labor] counsel in an arbitration that would have provided the due process she claims she was now denied."  SPA-43.

The District Court concluded that Appellant could not state a plausible procedural due process claim because, by her own allegations, she "resigned her post and accepted the benefits of a settlement agreement instead of availing herself of the procedural safeguards afforded to her," and was therefore provided "all the process

9

that was due" in the form of a pre-termination opportunity to respond and the availability of post-termination administrative procedures under New York State statute. SPA 43-44. Accordingly, the District Court dismissed Appellant's procedural due process claim on its face.[5]

## SUMMARY OF THE ARGUMENT

Appellant's bid to reinstate her First Amendment retaliation and Fourteenth Amendment procedural due process claims should be denied because her claims do not fall within the protections of either Constitutional Amendment. The District Court correctly determined that Appellant's personal lawsuits (*Flynn I* and *Flynn II*) did not constitute speech on a matter of public concern such that their filing could constitute protected speech under the First Amendment. Likewise, regarding the Fourteenth Amendment, the District Court correctly determined that there was no procedural due process violation where constitutionally adequate pre-deprivation and post-deprivation procedures existed and were available, even if Appellant chose not to exercise them. Thus, no basis exists to reverse the District Court's determination that Appellant's allegations failed to plausibly state any First Amendment retaliation or Fourteenth Amendment due process violations.

---

[5] The District Court also dismissed Appellant's substantive due process claims brought against Bloomingdale and Shipley. SPA-47. Appellant does not challenge that ruling on appeal.

**ARGUMENT**

**POINT I**

**THE DISTRICT COURT CORRECTLY HELD THAT APPELLANT'S SPEECH WAS NOT PROTECTED UNDER THE FIRST AMENDMENT.**

A cause of action for First Amendment retaliation cannot lie absent a threshold showing that the "speech or conduct was protected by the First Amendment." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). In that regard, a public employee's speech will be protected only if she speaks as a citizen on a matter of public concern. *Cole-Hatchard v. Cty. of Rockland*, 2019 U.S. Dist. LEXIS 47078, at *13 (S.D.N.Y. Mar. 21, 2019). This inquiry involves two separate sub-questions: (1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee. *Garcetti v. Ceballos*, 547 U.S. 410, 420-22 (2006). A First Amendment claim cannot lie if either question is answered in the negative. *Id*.

In this case, Appellant's First Amendment retaliation claims implicate two levels of speech. The first level is Appellant's complaints to her DOCCS supervisors regarding alleged violations of law and threats to public safety she observed as a parole officer. In *Flynn I* and *Flynn II*, Appellant claimed that her supervisors retaliated against her for making said reports. Said lawsuits were not brought against Appellees, nor did any of the factual allegations in those lawsuits concern Appellees. *See* A-26-54, 85-118.

11

The second level of speech is Appellant's lawsuits themselves – the public filing of *Flynn I* and *Flynn II*. Appellant contends in the instant action that, even though Bloomingdale, Shipley, and Oliver were not named as defendants or otherwise mentioned in *Flynn I* or *Flynn II*, they nonetheless subsequently retaliated against her for filing *Flynn I* and *Flynn II*. A-58-61 at ¶¶ 11-21 & 76-77 at ¶¶ 92, 95. Appellant's argument before the District Court and on appeal is that those prior lawsuits, by referencing and reciting Appellant's first level speech about parole-related issues, in turn became a second level of protected speech. Importantly, it is this purported second level of speech that is at issue in this case, not the first level that Judge Briccetti deemed to be of public concern, but still constitutionally unprotected, in his dismissal of *Flynn I*. *See Flynn v. DOCCS et al.*, 2018 WL 2041713 (S.D.N.Y. Apr. 30, 2018).

## A. The District Court Correctly Determined that Appellant was not Speaking on a Matter of Public Concern.

Appellant contends that in filing *Flynn I* and *Flynn II*, she engaged in protected speech. This Court has held that, in determining whether speech is protected, the central inquiry is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen*, 165 F.3d 154, 163-164 (2d Cir. 1999).

In *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008), this Court considered the case of a police officer who first filed a lawsuit claiming retaliation for raising concerns as part of his official duties and subsequently claimed retaliation stemming from his filing of the lawsuit itself. Like the District Court in this case, the *Ruotolo* Court declined to directly address the issue of whether the lawsuit "amount[ed] to speech by a 'citizen' rather than by a 'public employee' within the meaning of *Garcetti*[.]" *Id*. at 189 (quoting *Garcetti*). Rather, the *Ruotolo* Court concluded that the lawsuit did not constitute speech on a matter of public concern and, thereby, rendered immaterial the issue of whether the speech was made by a private citizen or public employee. *Id*. at 190.

In analyzing whether the lawsuit constituted protected speech, the *Ruotolo* Court considered the following factors: (1) the personal nature of the grievances alleged; (2) whether the retaliation concerned the privileges attached to the claimant's personal employment and/or position; (3) the nature of the relief sought in the lawsuit; and (4) the primary aim of the lawsuit. *Ruotolo v. City of New York*, 514 F.3d at 189-190.

Applying these factors to the instant case, it is clear that Appellant's prior lawsuits (*Flynn I* and *Flynn II*) did not constitute protected speech. First, both *Flynn I* and *Flynn II* expressly concerned alleged retaliation that was personal in nature — retaliation that resulted in Appellant's demotion and re-assignment and, in turn,

"harmed her livelihood and professional reputation by prohibiting her from earning substantial overtime payments." A-27. Second, the alleged retaliation unquestionably concerned Appellant's work status and her purported loss of position, privileges and remuneration as a result of such retaliation. A-52-53. Third, the relief sought in *Flynn I* and *Flynn II* was entirely personal to Appellant: compensatory and statutory damages, attorney's fees, costs and disbursements, and reinstatement to her "Special Assignment in the Sexual Offenders' Unit." A-52; A-117-118.[6] Finally, there can be no doubt that the "primary aim" of both lawsuits was to seek redress for the alleged retaliation and the personal damages that stemmed therefrom, including the alleged improper loss of work-related privileges and benefits. As in *Ruotolo,* the relief sought by Appellant in *Flynn I* and *Flynn II* was "for [herself] alone." *Ruotolo v. City of New York*, 514 F.3d at 190. Accordingly, Appellant's pleadings confirm the District Court's determination that Appellant's lawsuits were on their face "calculated to address personal grievances," SPA-39, as opposed to furthering a broader public purpose.

Appellant contends that the first level speech at issue in *Flynn I* is the same as the second level speech at issue in the instant action. Appellant is wrong. Although Appellant restated many of the same allegations in each of her three cases (*Flynn I,*

---

[6] The allegations and relief sought in *Flynn I* and *Flynn II* are nearly identical. *See generally* A-86-118.

*Flynn II* and the instant action), the speech at issue here is *not* her initial complaints to DOCCS officials about violations of law and threats to public safety (which first level speech Judge Briccetti characterized as undeniably a matter of public concern in *Flynn I*).[7]  A-21. Rather, the speech at issue in the present case is Appellant's second level speech, i.e., her subsequent lawsuits themselves, in which she alleges personal retaliation in response to her first level speech complaints.

It is inaccurate and illogical to argue, as Appellant does, that her pre-lawsuit speech, regarding specific issues within her employment environment, is the same as her subsequent speech via lawsuits alleging personal retaliation.  App. Br. at 29-30.  Also incorrect is any notion that Appellant "spoke in a publicly filed lawsuit about the dangers posed to children in Orange and Sullivan Counties during a several month period" concerning a sex-offender/parolee.  App. Br. at p. 23.  Rather, in pursuing her personal retaliation claims in *Flynn I* and *Flynn II*, Appellant spoke *about her prior speech* – a retelling of past speech in pursuit of her individual aims, not speech directed to the public or for the purpose of informing the public. In other words, Appellant's speech in question here is not the first level speech referenced in those lawsuits, but the second level filing of the lawsuits themselves.

---

[7] Appellee does not concede that said holding by Judge Briccetti is correct or that it has any collateral consequences for this case.

This distinction fatally interrupts Appellant's creative, but ultimately unavailing, two-step end-around established First Amendment limits. Appellant reasons that her speech is protected because (1) Judge Briccetti characterized her first level speech as a matter of public concern in *Flynn I* and (2) Appellant referenced such speech in two lawsuits that she filed as a private citizen, thus satisfying both prongs of the *Garcetti* test by filing one lawsuit after another's dismissal. *See* App. Br. at pp. 26-29.

However, Judge Briccetti dismissed Appellant's original retaliation claim in *Flynn I* because Appellant's first level speech was made as an employee (not a private citizen) and pursuant to her official employment duties. A-22. By contradistinction, the District Court dismissed the instant claim because Appellant's lawsuits were "calculated to address personal grievances" and thus not protected speech. SPA-38. As such, there is nothing inconsistent about these two decisions, which concern two fundamentally different types of speech in different contexts: one made in the course of official duties, one seeking redress of personal grievances, and both unprotected under the First Amendment as a matter of law.

Contrary to Appellant's suggestion, the District Court did not rule that a lawsuit can *never* constitute protected speech, it simply ruled that Appellant's particular lawsuits did not do so, for the reasons stated above. *See generally* SPA-

36-38. And, as set forth below, the cases that Appellant cites for the proposition that a lawsuit can constitute protected speech are inapposite and easily distinguished.

Appellant relies on a line of cases holding that lawsuits concerning discrimination in the workplace can constitute matters of public concern, particularly where they identify and seek redress of systemic discrimination against others. *See, e.g., Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 125 (2d Cir. 2005) (gender discrimination against a fellow employee); *Cortarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) (police department-wide race discrimination and bigotry). Unlike those cases, Appellant's lawsuits do not concern discrimination in the workplace, nor do they seek systemic change that would benefit the public at large.

Likewise, Appellant's lawsuits do not raise issues extending beyond her own world of grievances about the conditions and status of her employment. In *Golodner v. Berliner*, 770 F.3d 196 (2d Cir. 2014), this Court considered the case of a retaliation claim predicated upon a lawsuit concerning unconstitutional policies and intentional misconduct perpetrated by a police department upon a private citizen. The Court found the lawsuit was protected speech because of the "serious constitutional concerns" that the lawsuit raised, which concerns "extend[ed] well beyond mere personal [employment] grievances and into the realm of public concern." *Id*. at 204-205; *see also Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ*.,

444 F.3d 158, 163-167 (2d Cir. 2006) (speech at a press conference addressing hazing and sexual assault of a student on school property was a matter of public concern).

Here, though Appellant claims constitutional violations owing to her second level speech, these alleged acts of retaliation are not pursuant to any policy that would affect the general public or a colleague – hers are retaliation claims personal to her unique employment experience.  In other words, the speech in Appellant's lawsuits predominantly concerns her "dissatisfaction with the conditions of [her] employment" and her individual claims for redress. *Lewis v. Cowen*, 165 F.3d at 164.

Finally, unlike here, the predicate lawsuit in *Golodner* did not seek to incorporate prior unprotected speech; rather, the speech in question in *Golodner* was a lawsuit that had raised organic first level speech and claimed retaliation for that speech. Unlike *Golodner* and like *Ruotolo*, Appellant's lawsuits are firmly affixed to the conditions of her personal employment and are, therefore, not protected under the First Amendment. *Ruotolo v. City of New York*, 514 F.3d at 189.  This inevitable conclusion obtains even assuming that Appellant's first level speech constituted a matter of public concern that would have merited protection had it not occurred during the scope of her public employment because that first level speech is not at

issue here – the question is whether Appellants lawsuits themselves are worthy of First Amendment protection.

In *Flynn I* and *Flynn II*, the "content, form, and context" of Appellant's speech (*Connick v. Myers*, 461 U.S. 138, 147-148 (1983)) was entirely personal: their underline content is the story of alleged personal retaliation against Appellant, in the form of pleadings filed by her attorneys seeking personalized relief and damages, the context being the aftermath of alleged employment-related deprivations and reputational harm occasioned by Appellant's removal from her special assignment in the Sex Offenders Management Unit ("SOMU"). A-13-19 (reviewing Appellant's allegations in *Flynn I*). Thus, the retelling of her first level speech into her pleadings notwithstanding, there is no conclusion but that Appellant's lawsuits were, on their face, "calculated to redress personal grievances." *Lewis v. Cowen*, 165 F.3d at 163-164.

For these reasons, Appellant's argument that the District Court improperly considered her motivations in bringing *Flynn I* and *Flynn II* (App. Br. at 30-41) misses the mark. The District Court did not reach its determination by assigning any specific intention or motivation to Appellant, rather, it simply reviewed her pleadings on their face and concluded that *Flynn I* and *Flynn II* did not, at their core, address a matter of public concern; they were about Appellant's personal grievances and alleged retaliation levied against her and no other. SPA-39. Moreover, even if

the District Court could be said to have considered Appellant's motivations in rendering its decision, it was well within its rights to do so. *See Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009) (motive is properly considered as a factor in determining whether speech addresses a matter of public concern). Thus, nothing about the District Court's straightforward analysis contravenes any precedent in this Circuit.

For the reasons stated herein, this Court should not condone Appellant's attempt to circumvent established First Amendment precedent by disguising her second level, personal retaliation claims as first level speech made in the public interest.

## POINT II

### THE DISTRICT COURT CORRECTLY RULED THAT DUE PROCESS WAS SATISFIED.

A procedural due process claim is composed of two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). In the absence of a protected property interest, a procedural due process claim must fail. *Richardson v. New York City Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017).

On appeal, Appellant argues that the District Court erred in dismissing her procedural due process claim concerning an administrative disciplinary arbitration. Appellant concedes, as she must, that the arbitration in question arose pursuant to a collective bargaining agreement between Appellant's union (PEF) and New York State. App. Br. at 47 n.18. Appellant also concedes that she entered into a settlement agreement and, in so doing, forgave the opportunity to litigate in court any charges brought against her in the subject arbitration. Finally, Appellant conceded during oral argument that she could have, but did not, challenge or otherwise seek to nullify the settlement agreement and/or the arbitration process through a proceeding pursuant to Article 78 of New York Civil Practice Law & Rules.

Appellant's primary argument on appeal is that the District Court failed to adequately consider her allegations that Bloomingdale and Shipley (1) misrepresented the administrative disciplinary charges; (2) subjected her to duress and/or coercion with their threat of a criminal referral; and (3) denied her adequate opportunity to speak with criminal counsel before deciding to settle the administrative charges. App. Br. at pp. 20-21; 46-47. In sum, Appellant contends that she was denied due process because of the "manner in which [Bloomingdale and Shipley] conducted and treated [her] during the arbitration itself." App. Br. at 47 n.18.

Notably, Appellant provides no supporting caselaw or precedent whatsoever for her argument that, although she received notice and an opportunity to be heard, such opportunity was "inadequate." App. Br. at 47. At best, Appellant merely hints at unidentified due process standards of her own creation. Thus, the District Court correctly found that due process was satisfied whether Appellant's allegations concerning Appellees' alleged actions are classified as random and arbitrary or undertaken pursuant to established state procedures. SPA-41. Moreover, Appellant's contention that the District Court did not sufficiently consider her factual allegations regarding coercion and referral to criminal prosecution is belied by the record: the District Court clearly took note of and accepted these allegations as true, but nonetheless correctly found Appellant's due process claims infirm as a matter of law. SPA-43-44.

## A. Appellant Did Not Plausibly Plead a Cognizable Deprivation of a Liberty or Property Interest

As the District Court observed in its decision, Appellant was not terminated from her employment; she resigned. SPA-43 (citing TAC at ¶ 79). As of the time of her resignation, Appellant ceased to possess any "legitimate claim of entitlement" to any property interest in her employment and failed to plausibly plead any such interest or the source thereof. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Indeed, Appellant has no basis to claim procedural defects "because she resigned before her employer took all the steps necessary to fire her." *See Finley v.*

*Giacobbe*, 79 F.3d 1285 (2d Cir. 1996).  To hold otherwise would "deprive the employer of the opportunity to comply with the procedural obligations" that Appellant contends she was denied.  *See id.* (citation omitted); *see also Richardson v. New York City Bd. of Educ.*, 711 Fed. Appx. 11 (2d Cir. 2017).

Moreover, Appellant not only resigned, she accepted a settlement agreement that provided her with benefits — including the preservation of her pension with benefits and two weeks of pay.  Information *available at* www.iapps.courts.state.ny.us, Case No. EF006948-2018, Doc #116, Ex. B to Ranis Affirm., Stipulation of Settlement.[8]  Thus, Appellant's efforts to undermine her contractual settlement agreement via a Section 1983 action should not stand.  *See, e.g., Allen v. Riese Organization, Inc*., 106 A.D.3d 514 (1st Dep't 2013) (holding that an employee's acceptance of benefits pursuant to settlement agreement barred any claims of duress). Even assuming, *arguendo*, that Appellant plausibly alleged a constitutionally protected liberty or property interest, she was provided adequate due process, as set forth below.

---

[8] The "Draft Settlement Agreement" included Appellant's Joint Appendix (A-119-122) is not the final settlement agreement Appellant signed, nor was it submitted to or considered by the District Court in this case.  *See generally* District Court Docket Entries at A-1-13.  As such, the "Draft Settlement Agreement" (A-119-122) should not be considered on appeal.

**B. Appellant Was Provided Adequate Post-Deprivation Process**

The record is clear that the District Court considered Appellant's allegations regarding duress and threat of criminal prosecution and assumed, for purposes of deciding the Motion to Dismiss, that those allegations were true. SPA-12-13. The District Court's pointed question during oral argument was why, assuming Appellant's allegations to be true, did Appellant not avail herself of an Article 78 or another plenary action. SPA-13-14. Appellant's counsel's response was to concede that Appellant's Section 1983 action served as a means of "going around" Appellant's failure to timely file an Article 78 petition. SPA-14.

It is well-established that "there is no constitutional violation (and no available Section 1983 action) when there is an adequate state post deprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d at 882 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984)). Moreover, courts in this Circuit have routinely held that a proceeding brought pursuant to Article 78 is an adequate state post deprivation procedure. *See e.g., Hellenic*, 101 F.3d at 882 (finding that, even if the plaintiff had a protectable property and liberty interest, there was no deprivation where there was an opportunity for an Article 78 proceeding) ("[A]n Article 78 proceeding constitutes an adequate post deprivation procedure under the Due Process Clause.").

24

By her own admission Appellant could have, but did not, file an Article 78 petition. SPA-14. The availability of an Article 78 proceeding, and Appellant's failure to pursue it, dooms her claims regarding the "manner in which [Bloomingdale and Shipley] conducted and treated [her] during the arbitration itself." App. Br. at 47 n.18. Because Appellant makes clear in the TAC and her brief on appeal that she is challenging the way or manner in which her process was provided, including allegations that Appellees violated the penal law through improperly coercive tactics, (A-73, ¶ 75), her procedural due process claim falls squarely under *Hellenic* and was therefore properly dismissed on that basis because an adequate post-deprivation remedy was available to Appellant.

## C. Appellant Was Provided Adequate Pre-Deprivation Process

Appellant's due process claim also fails to the extent her allegations against Defendants-Appellees could be characterized as undertaken pursuant to established state procedures. As the District Court noted, the record establishes that Appellant received both notice and an opportunity to be heard with respect to her arbitration proceeding. Due process does not require more. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985) (stating, in the employment context, that a pre-termination hearing "need not be elaborate," so long as it provides "[t]he essential requirements of due process," which are "notice and an opportunity to

respond."). In this case, Appellant received both notice and an opportunity to respond, which she did.

In correctly finding due process satisfied, the District Court reviewed Appellant's own allegations in the TAC, including that Appellant received timely notice of the disciplinary charges on August 5, 2019 (SPA-41-42); that she engaged in the grievance process by invoking her right to "file a grievance regarding her discipline" (SPA-41); that an arbitration was to be held several months later on February 24, 2020 (SPA-41); and that union counsel represented Appellant in the disciplinary proceeding (SPA 42). Thus, Appellant's own allegations in the TAC confirm that she was afforded both notice and the opportunity to be heard. *See Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d at 467.

## CONCLUSION

For all the reasons herein, Defendants-Appellees respectfully request that this Court deny the instant appeal and affirm the District Court's order dismissing the Third Amended Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6).

Dated: November 28, 2022

/s/ Benjamin W. Hill
Benjamin W. Hill

26

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel hereby certifies that, pursuant to Fed. R. App. P. 32(a)(7)(B), the attached Brief of Defendants Appellees is proportionately spaced, has a typeface of 12 points or larger, and contains 5773 words. Counsel relies upon the word count provided by their word-processing software in making this certification.

Dated: November 28, 2022

<u>/s/ Benjamin W. Hill</u>
Benjamin W. Hill